May it please the court, my name is Allison Lukinich, and I'm an attorney from Raleigh, North Carolina. I represent the petitioner, Mr. Henry Ndibu. This case ultimately boils down to two main points. One, did Mr. Ndibu receive actual notice of the consequences of filing a frivolous asylum application? And two, was entry of the frivolous finding proper, as it was made seven years after the immigration judge denied his application for asylum? The factual issues of this case are not in dispute. He's a French speaker from the Democratic Republic of Congo. He was forced out of family pressures to rely on George, an unscrupulous interpreter, and then Patrick Satoun, a disbarred attorney who was later criminally convicted and sentenced to five years imprisonment for immigration. Is there any evidence in the record that he asked for a translator? Yes, he brought a translator with him to his initial asylum interview. And is there any evidence in the record that he wasn't able to understand what the translator was saying or that there was a problem with the translator? There is no evidence of that at the initial asylum interview in the record. However, because the interpreter that he brought with him was the interpreter that he testified, prepared the application, and filed the documentation, I would argue that clearly there was some deficiency in the interpretation. Because it was clear that George was not solely an interpreter, but George was someone acting as an attorney, preparing this application for him and filing it on his behalf without his knowledge of everything that was contained in it. So, there's therefore nothing in the record that indicates he did receive either the written warning or an oral warning of the devastating consequences of his actions by moving forward on filing a frivolous asylum application. This application was translated for him into French, and he was told by his interpreter what to write down on the application. The same translator fabricated his story in English, which was written out and included in the administrative record, providing no copy in French for him to review and to swear to. That same interpreter then interpreted his testimony at the asylum office. So, there are a lot of questions as to the accuracy and what did this interpreter do. Did this interpreter truly read every single question and piece of information on the application itself and adequately translate it? Furthermore, there's no indications that... Can I ask you just a question about all those questions? I mean, who would have the burden of proof on something like that? Just assuming hypothetically that the BIA has to figure out whether there was actual notice or whether a language barrier precluded that. I mean, would the petitioner have the burden of showing that there was in fact a language barrier, or is it your view that the agency would have to show that there wasn't? It's my view that it would be the agency's burden to show that, as it is their burden to demonstrate that the four criteria in matter of YL are established in upholding a frivolous finding. So, it would be my argument that it's the government's burden to demonstrate that as well. And in addition to no evidence in the record of these written warnings being translated or given to him, there's no evidence that there was ever any oral notice given to him by his now disbarred attorney, by the immigration judge, or by anyone throughout the proceedings, which is exactly why the BIA over the years has included clarifications and safeguards in its two precedential decisions, matter of YL and matter of BY, to establish what constitutes notice, to establish what steps an immigration judge... But what about his admission that he was advised by the court of the consequences of knowingly filing a frivolous asylum claim at the April 19, 2006 hearing? I don't believe he ever admitted that he was given notice of that. Well, let me see here. I think it's in the record at 207. I will point out that the application filed in advance of that hearing by his now disbarred attorney was never signed or sworn to by the immigration judge, nor was it signed by his hand. I'm sorry, what was not signed? The asylum application that was filed in court in advance of his April 2006 individual hearing was never signed by him, nor was it signed and sworn to by the immigration judge. In the closing argument, the written closing argument, which Mr. Mello filed on May 2, 2013, and it says, respondent at that time was advised by the court of the consequences of knowingly filing a frivolous asylum claim. Yes, and Mr. Mello is here with me today, and he will be handling the rebuttal. As he was the attorney, through the tenancy of the case, I will allow him to address that issue. But briefly, at the time, it is my understanding that we did not have the entire administrative record. The administrative record was ultimately submitted to our office through a Freedom of Information Act request on cassette tapes. It was never written out in the transcript that was provided through the administrative record once this appeal was filed. So at the time, I believe there was not full notice, that there was some misunderstanding as to the level of notice that was provided. So moving forward, the government contends that the board does not require an immigration judge to provide oral notice, which is simply incorrect. Matter of BY very clearly holds that sufficient notice is afforded when the immigration judge explains the consequences of filing a frivolous asylum application either at the time of the asylum application is filed or prior to the commencement of the merits hearing. So their assertion that there is no oral warning required at the board is simply incorrect. Are you making two separate arguments or are you arguing that even if there is no language barrier, are you arguing that as a general proposition there must always be oral notice or are you arguing that when there is a potential language barrier, there is a problem if there is not oral notice? Or both? Both, if you will permit me to explain. I believe that the matter of BY was decided to afford that extra safeguard when there is a language barrier issue because in the immigration court, there's always a certified translator and interpreter. It's not someone who's brought along. So while there may be these misunderstanding issues when an asylum application is first filed, and that person is entitled to bring their own interpreter to the asylum office for an interview, if the case is ultimately referred to the immigration court, which it was in this instance, at that point we're before the Executive Office for Immigration Review and there is a certified interpreter who is not going to influence the interpretations one way or another. You see how it might be good practice, but every court to consider this, right,  isn't that correct? Well, there are some circuit courts that have made that determination, but I would... Is there a no court that's come out the other way? Not to my knowledge that has said no. I would argue the distinctions in the five circuit courts have made that holding that the written warnings in the asylum application themselves are enough. However, in each of those circuit courts, the facts of the case clearly demonstrate that there was other notice also provided to the applicant, whether that be through an oral warning on the record by the immigration judge, whether that be through the immigration judge instructing the attorney to provide that warning outside of court, or whether it be a statement signed by the applicant at his asylum interview, which was translated, that clearly laid out again those warnings and the consequences of what filing a frivolous asylum application are. So I believe that Mr. Ndubu's case is clearly distinct from all of those because throughout the entirety of his proceedings, although he has always taken responsibility for his actions, he's admitted culpability for what he's done, he has never... There is no evidence that states that he himself was aware of these consequences and based on his character and based on the person he is, as established... Are you aware that if you repeatedly lie in a hearing or in any circumstance that there will be consequences? I think the record he did in his final hearing before the immigration judge in 2013 explained to the immigration judge that the country and the culture that he's from, that's what you have to do to get ahead in life, that it's a culture of lying and that he hasn't ever faced consequences for those actions before. He had no understanding of the court system and of what our legal system here is in the United States, and up until he retained certain counsel, he was never made aware of these warnings. They were never clearly translated to him what he was attesting to in the written application. And as I'm stating, I believe our case is clearly distinct. The petitioner's case is clearly distinct from other circuit court decisions that have held written notices sufficient. In Rebus, the 10th Circuit decision that was the first holding in 2008, oral warnings were provided by the immigration judge not just once but on two occasions prior to the judge entering a holding for frivolous finding. I'm sorry, just because I know you're running out of time, I just want to sort of push you back to I guess what is your second argument that putting to one side for a minute whether oral warnings are required as a matter of course, this question of whether they should be required, whether something should be done when there's a potential language barrier, that kind of distinct argument that there was a barrier here that prevented actual notice, a language barrier, that was raised before the BIA? Because I'm struck by the fact that the BIA doesn't seem to have addressed it. No, they haven't. As we've maintained in our argument, the due process and fundamental fairness would dictate that this case be remanded back to the BIA to reconsider that. Because you did raise this argument clearly before the BIA, not just the argument that as a matter of course there should always be oral warnings but that here there was a language barrier. Yes, that has been raised. Yes, that's been consistent throughout. So the other main point that is at issue in this case is whether it was actually proper for the immigration judge to make a frivolous finding when it was entered seven years after Mr. Ndubu's asylum application was denied. And this was also five years after the Board of Immigration Appeals upheld that asylum denial. The government contends that Mr. Ndubu failed to exhaust this argument at the board and therefore is not exhausted his administrative remedies. However, Lizima V. Holder, decided by this court in 2011, states that as long as the issue is identified at the BIA, it can be brought up again. And this was absolutely identified in Mr. Ndubu's brief to the BIA, although it was not expounded on. Ultimately, there's a presidential case matter of XMC at the BIA that states that a frivolous asylum finding can be entered at any time prior to the decision. Ultimately where someone withdraws an asylum application and then moves forward on another application, the immigration judge is still entitled to uphold a frivolous finding or to make a frivolous finding. However, I would argue that our case is clearly distinguished because in the present case, the immigration judge at the initial 2006 hearing never brought up frivolousness. It was never mentioned. It was never at issue. The immigration judge denied the asylum application ultimately because there was not enough evidence to determine it was filed timely. There was not enough evidence to determine that Mr. Ndubu filed it within one year of his entry. That decision went to the Board of Immigration Appeals on a pro se appeal and the Board upheld that decision. They said, okay, asylum case is therefore denied and they remanded on other issues. So there's a jurisdictional issue as to whether seven years after the asylum application is denied, whether the immigration court is still entitled to hold a frivolousness finding. Again, this goes to due process concerns and fundamental fairness. There are no cases on point. A matter of XMC does discuss these issues to some extent. However, it does not discuss after an asylum application has been decided on and after that decision has been upheld by the Board whether a frivolous finding after that fact is still warranted. They have decided frivolous finding can be made at any time even if there's never a final decision on the merits, but they do not discuss if after a final decision on the merits is made whether frivolousness can still be found. And under, again, the due process and fundamental fairness would argue that they would be collaterally stopped from doing so or else you'd be looking at years down the road, these cases getting reopened and many people having their citizenship stripped and residency taken away when the issue was never at issue. And thank you very much. All right. Let's hear from the government. Good morning, Your Honors. May it please the Court. My name is Jennifer Singer and I represent the United States Attorney General, the respondent in this matter. As Petitioner's counsel just argued, Petitioner does not dispute that he filed a frivolous or fraudulent asylum application. Rather, he's arguing that the bar to receiving benefits under the Immigration Act should not apply to him because first, that he did not receive notice, and second, that the immigration judge is not entitled to make a frivolous finding on remanded proceedings. As for the notice issue, Petitioner makes two arguments. First, about whether written notice or oral notice is sufficient, and second, that he claims he didn't understand the written warning. As to the first issue, he argues that in addition to written warnings, that the immigration judge should have given him oral warnings, and in the absence of those oral warnings, that that notice was defective under the statute. This Court has not yet to rule on that issue, but the Court should find that the written advisals in the I-589 asylum application itself is sufficient under the statute. Under the notice provision of the statute, INA 208-D4A, all it states is that the Attorney General shall advise the alien of knowingly filing a frivolous asylum application at the time of filing. That's it. It doesn't specify that the notice needs to be in writing or it needs to be oral or that the immigration judge has to give it. It just said that notice must be given. Relying on that statute and that reasoning, five circuit courts have held that written notice is sufficient under that statute, and written notice in the I-589 in itself is sufficient. Counsel, all of those cases sort of say expressly, and no one is arguing in these cases that they couldn't understand it, that there was a language barrier. So I just want to make sure I understand your argument. Is it that written notice is, as a general matter, sufficient or written notice is sufficient even if the applicant doesn't understand English and no one is translating? Twofold. Yes, that written notice in the 589 itself is sufficient. There may be a gray area where the alien later claims that he didn't understand it, but that here is not really the case. I mean, he's now claiming belatedly. I guess I'm just trying to figure out the rule of law. Put to one side the strength of this petitioner's claim that he didn't understand. I mean, are you asking for a ruling that no matter what, written notice is always sufficient or that written notice is sufficient as all the other circuit courts have held, at least so long as there's no claim that a language barrier prevented it from being actual notice? I mean, I think from a fairness standpoint, written notice would be sufficient so long as there's no claim that the alien didn't understand. But in this case, while petitioner is now claiming that he doesn't understand, the facts just simply do not support that contention. He argued, he conceded before the immigration judge in his written closing statement that notice was not an issue. He didn't claim that he didn't understand it. Petitioner, during his testimony in the remanded proceedings, claimed that he learned English quickly after he married his U.S. citizen wife. He married his U.S. citizen wife in 2002. He applied for asylum in 2004. Almost a full two years later, it was suggested that he at least had an understanding of English. And he also admitted that his wife had told him that it was wrong to file a false application in court. He admitted that and did not listen to her. That's correct. So he did know. And also in his I-589, it's his handwriting. It's his signature. It's written in English. He swore to its contents before an asylum officer during an interview. He was given an opportunity to make changes to that before the immigration judge in the initial round of proceedings. And I would just suggest that even though he's saying he doesn't now understand what he was signing or that he didn't understand the warning because he didn't speak English, just those facts suggest that he did understand English. And because he did understand it, that that notice in the bottom part portion on the last page of the asylum application was sufficient. Counsel, what if I just hypothetically, what if I agree that the facts sort of suggest that he understood English, but it's not 100% obvious. Why can't the BIA figure this out? Why doesn't this go back down to let someone figure out or make a more conclusive finding about whether or not there was a language barrier here? Because no one seems to have addressed this before. Well, going back, for the BIA to have addressed it, the immigration judge generally would have addressed it. But the immigration judge didn't because in the written closing statement before the IJ, Petitioner's Counsel conceded that notice was an issue. So the IJ didn't address it. And then on appeal to the board, Petitioner didn't really make that claim of notice. He just basically said that Petitioner didn't understand the nature of immigration proceedings and he was represented by unscrupulous, at first a non-attorney named George, and then later on by an attorney. But that's just kind of a red herring simply because he was advised or guided by unscrupulous people and the appeal does not negate the fact that he did or could have understood what the adviser said and still continued. I looked at the BIA papers and it looked to me like it wasn't, you know, maybe the language wasn't as precise as one might have liked, but that you could read it generously to at least be raising this idea, look, I didn't get actual notice because I don't speak English. You don't think so? You think this claim has been absolutely waived? I think it's been waived and he did concede it before the immigration judge. He did concede what? He did concede what before the immigration judge? The immigration judge allowed the attorneys to make written closing statements and in that written closing there's that four prong test under matter of YL and Petitioner conceded that Issue 1, which is the notice issue, was not an issue in the case. So there was really no need for the IJ to address it. And that was after the George and those attorneys that he had an issue with. That was filed by the attorneys that he's represented by today? Yes, correct. That was following the remanded proceedings. So based upon those facts, I would argue that he did understand English and he did know what he was signing and received the written warning and understood the written warning and then piggybacking on to that that warning in the I-589 itself is sufficient notice under the statute and circuit courts, sister circuits have agreed on that point. I would also like to briefly turn to the issue of whether the immigration judge properly made a frivolous finding for the first time on remanded proceedings. Again, this argument the court has no jurisdiction to consider that argument as the petitioner did not raise it before the board. In any event, in this case, it's kind of a long procedural history, but before the board on the first go around, the board affirmed the denial of asylum based on an untimeliness finding and then remanded the remainder of the proceedings, applications for withholding of removal and protection under convention of torture to the immigration judge for the fact finding. The fact that there was no specific or current asylum application pending on remanded proceedings is immaterial to the question of whether an immigration judge may then go ahead and make a frivolous finding on remanded proceedings. The trigger, as explained in the board's decision in matter of XMC, the trigger on whether an IJ can go ahead and make a frivolous determination is whether an asylum application was filed at one point in time or made at one point in time. The statute at 208 D6 talks about whether an alien made a frivolous application, then he may be barred, and then the regulation discusses in terms of whether an application for asylum was filed. And that's the trigger for whether or not an immigration judge can go ahead and make a frivolousness finding. These provisions do not limit a frivolousness finding to applications going forward, whether a new one is filed or whether one is pending at the time. And to find otherwise would just lead to almost absurd results. It shouldn't be that an alien should not benefit from filing an asylum application in the past that he admitted to contain fraudulent information and just because that application was denied for other reasons should not preclude the immigration judge from still finding that it was frivolous. I'm sorry, can I go back just briefly to this concession that notice wasn't an issue? Because just the facts of this case I have trouble keeping track. The lawyer who made that concession, is he the one who's in prison for the way he conducted these asylums? No, it's an administrative record on page 208 and it's current counsel. It's not George and it's not the other attorney. There's George and there's the one in prison. And now current counsel, yes. It's on 207 and 208. He did it twice. If there's no further questions I just want to basically sum up for these reasons and for the reasons we state in our brief, it's the government's position that the petitioner received adequate notice as per the statute simply because it was written in the 589 and that he understood those advisals so whatever argument he makes now that he didn't understand, the facts suggest that he did understand. And that the agency is permitted on the basis of a frivolous finding, which it did here and simply because there was no pending asylum application in front of it would not preclude it from going ahead and making that finding and because of that and because the other elements of YL are satisfied that the court should affirm the agency's frivolous finding and fine the petitioner barred from seeking adjustment of status and a waiver. Thank you, Your Honors. Okay, thank you. Reply. Good morning, Your Honors. May it please the court. My name is Jim Mello and I am said counsel that's been mentioned a few times here and I will admit openly that this procedurally was a very interesting case for me. It's hard to pick up a case sort of midway through the process and without having had the entire complete record as my co-counsel had indicated I'm going to have to I will openly admit I made a legal error in writing that brief. At that time I did not have the full entirety of the record that we later received when we submitted the appeal to the BIA. Lacking that record I obviously couldn't have known exactly what notices were or were not given. I didn't have the prior transcripts of any prior proceedings. In this case actually I was sent tapes, audio tapes and I didn't have all of that documentation when I wrote that brief unfortunately. And unfortunately I did legally concede that but that was my plain legal error and I openly admit that and unfortunately I hope it does not happen again. Mr. Nadibu is a very good man. I've obviously known him for a long time at this point. Trying to fix a problem that he has had because somebody else convinced him to do this. In reality Henry would be a U.S. citizen right now if he had had proper legal counsel from the beginning. He was already married to a U.S. citizen. She could have petitioned for him much as she did later on in life and he could have he'd be a citizen right now. That's what appalls me the most about this case. And Henry in the record he's a very religious man. He's never even had a speeding ticket. I don't know anybody who's not had a speeding ticket or a parking ticket or anything like that. And I ponder what would have happened if he had been there in court and a judge had specifically given him these warnings or if someone in the asylum office had specifically given him these warnings and interpreted them to him properly and explained to him the severity of the consequences. That he knew he was doing something wrong, he openly admits that. He knew he was doing something wrong. He knew he was lying. He knew that this attorney had produced false documents. He knew that this attorney was providing I thought your co-counsel said he didn't really know he was doing something wrong when he was repeatedly lying because that's the way he had lived his life before. Yes. I think a lot of people who come from a lot of third world countries, it's a way of life. It's bribery, extortion, manipulation, whatever it is you need to do to get by on a day to day basis. It's in essence a way of life. It doesn't mean that you don't know it's wrong or that you're lying or that you're fraudulently creating documents. The reality is in this particular case the attorney and George are the ones who created all these other documents. They're the ones who created the story for him. Now the question is did they properly advise him? I honestly doubt it. They have no interest in properly advising him and scaring him into what are the severity of these consequences. Again, if this and I don't even want to call him an attorney because he was not in any sense of the word. It appalls me that he had a certificate to be an attorney. He was certainly not one. But if he had had proper counsel, he would be a citizen. It just comes down to that. And so my point, my main point being is that these people had no interest in Henry knowing the truth of the severity of the consequences. And I hope that this case can shed some light on this so that people in Henry's situation don't end up where he is today. Trying to make these arguments. And so we don't know if these consequences and the severity of these consequences. Yes, his wife told him, you know, you're doing something wrong. But that's different than actually getting legal warnings and having explained to him the severity of those consequences. Those are two very different steps. I hope that in the future people in I would hope that had a judge sat him down and explained to him you will never be able to receive any immigration benefit. It would have been a wake-up call. He would have said, you know what, I simply can't go through with this. And just discarded his attorney and any other people that were involved in this debacle. And so I appreciate your time unless anyone has any further questions. Thank you. We'll come down and recounsel and then go into the next case.
judges: William B. Traxler, Jr., Stephanie D. Thacker, Pamela A. Harris